PEOPLE ex rel. LAWYER, Town Sup'r, v. BOARD OF SUP'RS OF SCHOHARIE COUNTY.

(Supreme Court, Trial Term, Schoharie County.  October, 1902.)

1. COUNTIES—TAX DISTRICT—BANK SHARES.

Laws 1896, c. 908, § 24, as amended by Laws 1901, c. 550, § 2, provides for the assessment of a tax on bank shares and for its distribution among the tax districts in which the bank shares are taxable. Tax Law, § 2, defines a "tax district" as a political subdivision of the state having a board of assessors authorized to assess property therein. *Held*, that a county is not a "tax district" within the meaning of such statute.

2. MANDAMUS TO COUNTY SUPERVISORS.

Where a board of supervisors makes a mathematical error in distributing the tax laid on bank stock as directed by Laws 1901, c. 550, § 2, it acts ministerially, and mandamus will lie to correct the error.

Application by the people, on the relation of David C. Lawyer, as supervisor of the town of Cobleskill, for writ of mandamus to the board of supervisors of Schoharie county to compel a lawful distribution of a tax received on bank stocks assessed in the town. Writ granted.

Watson Lamont (George M. Palmer, of counsel), for relator.
Dow Beekman (Albert C. Tennant, of counsel), for defendant.

CHESTER, J.  In the village and town of Cobleskill are two banks.  In the year 1901 the assessors of that town made their assessment against each stockholder of such banks in the manner required by law.  The aggregate assessed value of such shares of stock of said banks respectively was as follows:

The First National Bank of Cobleskill........................... $193,235 08
The Farmers' & Merchants' Bank of Cobleskill.................  65,431 29

Under the provisions of the tax law (Laws 1896, c. 908, art. 2, § 24, as amended by Laws 1901, c. 550, § 2) this assessment of bank shares was subject to a tax at the rate of 1 per centum upon

such value. This tax was paid by these banks, respectively, to
the treasurer of Schoharie county, as follows:

The First National Bank............................................... $1,932 35
Farmers' & Merchants' Bank.........................................     654 31
                                                                   ----------
         Total tax paid.............................................. $2,586 66
                                                                   ==========

No question is made as to the regularity or amount of the assess-
ment, but it is claimed by the relator that an erroneous principle
was adopted by the board of supervisors in distributing or appor-
tioning this tax amount in the tax districts entitled thereto. The
board apportioned the tax as follows:

To the county of Schoharie........................................... $  568 88
To the village of Cobleskill.........................................   1,385 54
To the town of Cobleskill............................................     632 24
                                                                   ----------
                                                                     $2,586 66
                                                                   ==========

The village and town of Cobleskill refused to receive any part
of the sum so apportioned to them, respectively, when the county
treasurer offered to pay it to them, on the ground that they were
entitled to have the whole of the tax refunded and that the county
was not entitled to any of it. The tax law, as amended in 1901, §
24, after providing for the method of the assessment and collection
of tax on bank shares, contains the following clause:  •

"The tax hereby imposed shall be distributed in the following manner:
The board of supervisors of the several counties shall ascertain the tax rate
of each of the several town, city, village, school and other tax districts in
their counties, respectively, in which the shares of stock of banks and bank-
ing associations shall be taxable, which tax rates shall include the propor-
tion of state and county taxes levied in such districts, respectively, for the
year for which the tax is imposed, and the proportion of the tax on bank
stock to which each of said districts shall be respectively entitled shall be
ascertained by taking such proportion of the tax upon the shares of stock
of banks and banking associations, taxable in such districts respectively,
under the provisions of this act as the tax rate of such tax district shall bear
to the aggregate tax rates of all the tax districts in which said shares of
stock shall be taxable."

The provisions above quoted require the tax to be distributed
among the tax districts in which the bank shares are taxable. To
justify the distribution of a portion of the tax to the county re-
quired the board to regard the county as a tax district. This it ap-
pears they did, but in so doing I think they fell into an error. The
tax law (section 2) defines a "tax district" to be "a political subdi-
vision of the state having a board of assessors authorized to assess
property therein for state and county taxes." While a county, like
towns and villages, is a political subdivision of the state, it has no
board of assessors, as do towns and villages, and, therefore, it does
not come within this statutory definition of a tax district. It was,
therefore, unlawful for the board to include the county in its ap-
portionment of this tax, and the whole of it should have been ap-
portioned to the town and the village of Cobleskill, which were the

only "tax districts" within which the bank shares, upon which this tax was paid, were taxable.

It appears that the board ascertained that the tax rate for 1901 of the town of Cobleskill was .0047, and of the village of Cobleskill .0103, making the aggregate tax rates of both tax districts .0150. Under section 24 of the tax law the amount of the bank tax to which each of said tax districts is respectively entitled is such proportion thereof as the tax rate of such tax districts shall bear to the aggregate tax rates of all the tax districts in which the shares of stock shall be taxable. Following this provision of law, it was the duty of the board to apportion the tax on these bank shares, amounting to the sum of $2,586.66, to the town and village of Cobleskill, being the only two districts where the shares were taxable; and the town is entitled to $827.12, or .0047/.0150 thereof, and the village to $1,759.54, or .0103/.0150 thereof.

In ascertaining the tax rate for the payment of county and state taxes, it appears that the board did not include in the aggregate equalized valuation of the real estate and the other personal assessments any of the bank-stock assessments in the county, which amounted in all to $386,562.93, and by this process made the aggregate of real and personal assessments the sum of $12,024,087. The total of state and county taxes being $50,854.52, the tax rate was ascertained to be .004229. If the bank-stock assessments had not been eliminated from the total valuations, a computation shows that the tax rate would have been reduced to .0040976.

Much attention was given on the argument and briefs of counsel to the question as to which of these methods of ascertaining the rate was correct under the law, counsel for the relator urging that the assessments on bank stocks should be included, and for the defendants that they should be excluded. I do not think, however, that the decision of this question is essential to the determination of the case. Even if an error has been committed by the board in this respect, it cannot be corrected in this proceeding, as it affects all the tax districts of the county, and they are not here as parties.

It is also urged on behalf of the board that, in making the apportionment of the bank tax among the districts entitled thereto, they were required to exercise judgment and discretion, and having acted, even though erroneously, their acts are not subject to the writ of mandamus. While the law required the board to ascertain the tax rate of the districts entitled to participate in the distribution of the tax, that duty was purely ministerial, and not judicial. The rate for the town of Cobleskill, .0047, was known by the board, for they had previously fixed it in levying the taxes against the town. The rate for the village of Cobleskill, .0103, had been officially reported to the board by the treasurer of the village. These rates were existing facts which the board had to ascertain. To do so required the exercise of no discretion. When ascertained, they had the simple duty, under the law, of adding the rates together, and giving to the village tax district and to the town tax district so much of the tax as the tax rate of each district bore to the aggregate tax rates of both tax districts. This again involved the exercise of no discretion

or judgment, but simply a mathematical calculation, in which accuracy only was requisite.

To correct the error of law which the board fell into in regarding the county as a tax district, and apportioning a part of the fund to it, I think the relator is entitled to the peremptory writ of mandamus prayed for, but, as the board acted under legal advice, and evidently in good faith, the writ should issue without costs. Ordered accordingly.